IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00801-PAB-KLM

PAULA STANTON, a Colorado resident, and
PATRICK STANTON, a Colorado resident,

    Plaintiffs,

v.

ENCOMPASS INDEMNITY COMPANY, a foreign corporation,

    Defendant.

_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Defendant Encompass Indemnity Company's Motion to Strike Certain Paragraphs of the Second Amended Complaint** [Docket No. 28; Filed July 13, 2012] (the "Motion"). The Motion is referred to this Court for resolution. [#30]. Plaintiffs submitted a Response [#36] in opposition to the Motion on August 2, 2012, and Defendant filed a Reply [#37] on August 20, 2012. Thus, the Motion has been fully briefed and is ripe for review. For the reasons stated below, the Court **GRANTS** the Motion **IN PART**.

## I. BACKGROUND

This action arises from an accident that occurred on December 12, 2010, when Plaintiff Paula Stanton ("Mrs. Stanton") was hit by a car while she was jogging on a

sidewalk in Breckenridge, Colorado. *Second Amended Complaint* [#22] at 2.[1] The driver of the vehicle had liability insurance of $200,000, all of which was paid to Mrs. Stanton within a month after the accident. *Id.* On January 7, 2011, Mrs. Stanton sought underinsured motorist coverage benefits from Defendant, her insurer at the time of the accident. *Id.* Defendant ultimately paid Mrs. Stanton the policy limit of $100,000 on May 31, 2012, approximately two months after this action was filed. In light of Defendant's payment of the policy limit, the Court directed Mrs. Stanton, the sole Plaintiff at the time, to file an amended complaint, which she did on June 7, 2012. [## 17, 18].

Three weeks later on June 28, 2012, Plaintiffs filed the Second Amended Complaint [#22]. The Second Amended Complaint adds Patrick Stanton ("Mr. Stanton") as a Plaintiff. In addition to the allegations regarding Mrs. Stanton, the Second Amended Complaint alleges that on May 18, 2012, Mr. Stanton, through counsel, requested loss of consortium benefits under his wife's underinsured motorist policy. [#22] at 8-9. Plaintiffs contend that Defendant's counsel informed Plaintiffs' counsel that Colorado law did not authorize recovery by Mr. Stanton for loss of consortium benefits under the policy and failed to provide him with a prompt and accurate explanation for denial of benefits. *Id.*

Plaintiffs raise two causes of action against Defendant based on their contention that Defendant improperly delayed payment of the underinsured motorist benefits. *Id.* at 11-12. First, they allege violations of "insurance industry standards and the Colorado Unfair Claim Practices Settlement Act" pursuant to C.R.S. § 10-3-1104(1)(h) and § 10-3-1115. *Id.* Second, Plaintiffs allege a breach of the covenant of good faith and fair dealing. *Id.* at 12.

---

[1] Defendant removed this matter from the District Court of Summit County, Colorado, on March 28, 2012. [#1].

Case 1:12-cv-00801-PAB-KLM   Document 48   Filed 09/27/12   USDC Colorado   Page 3 of 11

## II. ANALYSIS

Defendant argues in the Motion that several paragraphs in the Second Amended Complaint should be stricken. Specifically, Defendant seeks an order striking paragraphs 64-71, 73 and 77[2] pursuant to Fed. R. Civ. P. 12(f). Defendant argues that those paragraphs refer to communications between counsel pursuant to D.C.Colo.LCivR 7.1 with respect to whether Defendant would oppose the filing of a second amended complaint adding Mr. Stanton and his claim for loss of consortium. Defendant contends that such communications should not be allowed to support a claim for bad faith delay of benefits. Defendant argues that doing so would have a chilling effect on attempts to confer under Rule 7.1. Further, Defendant contends that Plaintiffs' use of such communications to support its claims is an attempt to make counsel for Defendant a fact witness. Defendant therefore requests that the identified paragraphs be stricken.

Plaintiffs argue in response that because Defendant was represented by counsel, Mr. Stanton had to communicate with Defendant through Defendant's counsel. They argue therefore, that Mr. Stanton, through his counsel, inquired about benefits for loss of consortium by contacting Defendant's counsel. They further contend that counsel for Defendant never deferred Mr. Stanton's inquiries about coverage to an adjustor or anyone else within the company. Plaintiffs argue that the exchanges with counsel for Defendant support a claim for breach of the covenant of good faith and fair dealing and should not be stricken.

---

[2] The Second Amended Complaint contains two paragraphs numbered 77, one on page 10 and one on page 11. Defendant seeks relief only with respect to the one on page 11. It should also be noted that the Second Amended Complaint contains two paragraphs numbered 73, but Defendant fails to indicate which of the two it seeks to strike.

In reply, Defendant argues that the communications clearly show they were for the purpose of conferring about whether Defendant would oppose the filing of a second amended complaint joining Mr. Stanton in the action. Defendant contends that Plaintiffs' characterization of the communications as a request for loss of consortium benefits under the policy is misleading and wrong. Defendant argues that because the communications are immaterial to Plaintiffs' causes of action, they should be stricken.

## A. Legal Standards

Fed. R. Civ. P. 12(f) provides that the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "A matter is immaterial if it has no essential or important relationship to the claim for relief pleaded." *Ctr. for Native Ecosystems v. U.S. Fish & Wildlife Serv.*, No. 08-cv-02774-WDM, 2010 WL 2035580, at *2 (D. Colo. May 20, 2010) (unreported decision). "A matter is impertinent if it does not pertain and is not necessary to the issues in question in the case." *Id.* Whether to strike matters from a complaint is within the Court's sound discretion. *See* Fed. R. Civ. P. 12(f)(1).

"The purpose of Rule 12(f) is to save the time and money that would be spent litigating issues that will not affect the outcome of the case." *Kimpton Hotel & Restaurant Group, LLC v. Monaco Inn, Inc.,* No. 07-cv-01514-WDM-BNB, 2008 WL 140488, at *1 (D. Colo. 2008) (citing *United States v. Shell Oil Co.*, 605 F. Supp. 1064, 1085 (D. Colo. 1985)). However, "[s]triking a portion of a pleading is a drastic remedy; the federal courts generally view motions to strike with disfavor and infrequently grant such requests." *Webster v. Nations Recovery Center, Inc.*, No. 09-cv-01685-WYD-MEH, 2009 WL 2982649, at *1 (D.Colo. 2009) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and*

*Procedure* § 1380 (3d ed. 2004)).  Motions to strike may be granted "when the allegations have no bearing on the controversy and the movant can show that he has been prejudiced." *Klimpton Hotel & Restaurant Group, LLC,* 2008 WL 140488, at *1 (citing *Sierra Club v. Young Life Campaign, Inc.,* 176 F.Supp.2d 1070, 1086 (D.Colo. 2001)).

In ruling on the Motion, the Court, without converting it into a motion for summary judgment, "'may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents authenticity.'" *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) (permitting consideration of such documents in the context of a motion to dismiss); *Rubio v. Turner Unified School District No. 202*, 475 F.Supp.2d 1092, 1097 (D. Kan. 2007) (applying this standard in the context of a motion to strike and motion to dismiss).  E-mails are among the documents a court may consider under these circumstances.  *See Hernoe v. Lone Star Industries, Inc.*, No. 12-cv-0167-CVE-TLW, 2012 WL 4052536, at *1 n.3 (N.D.Okla. Sept.13, 2012) (holding court could consider e-mails that were referenced in the amended complaint and central to plaintiff's claims).

Here, Plaintiffs Second Amended Complaint refers to the e-mail communications with Defendant's counsel that Defendant has attached to the Motion.  [#22] at ¶¶ 64, 68 and 70.  Plaintiffs have not disputed the authenticity of or otherwise objected to the Court's consideration of the e-mails.  The Court therefore has considered the e-mails in its analysis.

**B. Application**

The e-mail communications at issue that form the basis for Mr. Stanton's allegations in the Second Amended Complaint began with a written inquiry from Plaintiffs' counsel.

[#28-1] at 3. On May 17, 2012, Plaintiffs' counsel asked Defendant's counsel if he opposed joining Mr. Stanton as a Plaintiff and cited a case that allegedly supported his request. *Id.* Defendant's counsel responded on May 18, 2012 that in his view the case cited by Plaintiff's counsel did not support loss of consortium damages pursuant to an underinsured motorist policy. *Id.* Defendant's counsel asked if Plaintiff's counsel had other authority to support his position. *Id.* Plaintiff's counsel responded by asking Defendant's counsel if it was his position that Mr. Stanton has no legal claim and if so what was the basis for that position. *Id.* at 2. Defendant's counsel then reiterated that he did not believe the case cited by Plaintiff's counsel supported joinder of Mr. Stanton and he again asked for additional support, which he said he would be glad to consider along with a proposed amended complaint. *Id.* He further stated, "Thank you for your continuing effort to confer under 7.1." *Id.*

Plaintiff's counsel then again asked if it was Defendant's position that Mr. Stanton was ineligible to pursue a loss of consortium claim here. *Id.* Defendant's counsel explained that he was only responding to the case cited by Plaintiff's counsel which in his view did not appear to support such a claim. *Id.* He stated, however, that he would consider other authority and he again asked Plaintiff's counsel to send him the proposed amended complaint so he could review it. *Id.* In a follow up e-mail on May 21, 2012, Plaintiff's counsel cited another case in support of a derivative claim for loss of consortium pursuant to an underinsured motorist policy. *Id.* at 1. In a response the next day, Defendant's counsel wrote, "Thank you for clarifying your position on this point of Colorado law in furtherance of the requirement to meaningfully confer under Local Rule 7.1." *Id.* In light of the additional case citation, Defendant's counsel stated that his client "will not

oppose your motion to amend the complaint but does reserve the right to clarify the law on this issue by motions practice as may be appropriate later in the case." *Id.* Thus, after only four days of conferring over whether Defendant would oppose the filing of a second amended complaint, the issue was resolved. Plaintiffs, however, did not file the Second Amended Complaint [#22] until more than a month later on June 28, 2012.

The paragraphs in the Second Amended Complaint that Defendant seeks to strike characterize the above e-mail exchanges as a request for coverage under Mrs. Stanton's underinsured motorist policy. Plaintiffs allege that Defendant owed Mr. Stanton a duty to comply with the Colorado Unfair Claim Settlement Practices Act and "provide him with a prompt and accurate explanation for his coverage benefits." [#22] at 9. Thus, Mr. Stanton is relying on the e-mail exchanges between his counsel and Defendant's counsel to support his causes of action.

The Court agrees with Defendant that the e-mail communications were for the purpose of conferring under Rule 7.1 to determine if Defendant's counsel would oppose a second amended complaint adding Mr. Stanton as a Plaintiff. Plaintiffs' characterization of the communications as a failure by Defendant to provide Mr. Stanton with an explanation of whether he was or was not entitled to loss of consortium benefits is misleading and is not supported by the clear language of the communications. As the e-mails indicate, the exchange was initiated to determine whether Defendant's counsel would oppose the filing of a second amended complaint. Defendant's counsel continued to refer to Rule 7.1 throughout the e-mails as the basis for the communications. Moreover, only a few days after the initial request, Defendant's counsel stated he would not oppose the filing of a second amended complaint.

Having found that the e-mail communications were exchanged for the purpose of conferring about the proposed second amended complaint, the Court finds that Plaintiffs' allegations in paragraphs 64-67, 71 and 77 of the Second Amended Complaint are "immaterial" and "impertinent" to the claims for relief in this case.[3]  See Fed. R. Civ. P. 12(f).  The conferral e-mails in this case about a proposed second amended complaint have no bearing whatsoever on whether Defendant violated the Colorado Unfair Claim Practices Settlement Act or breached the covenant of good faith and fair dealing with respect to the underinsured motorist policy.

As to the issue of prejudice, the Court agrees with Defendant that allowing the subject paragraphs to remain in the Second Amended Complaint would result in prejudice to Defendant in that Defendant's counsel would be placed in the position of being a fact witness.  Plaintiffs' allegations that Defendant's counsel's e-mails provide factual support for their claims for relief could place counsel in the position of having to testify about those e-mails.  Plaintiffs are, or should be, well aware of this in light of the Court's previous Order disqualifying their original counsel because of his extensive involvement in pre-filing communications. [#39].  Because the e-mails have no bearing on Plaintiffs' claims, the Court finds no reason to put Defendant's counsel in that position.

With regard to Planitiffs' argument that because Defendant was represented by counsel, Mr. Stanton had to communicate with Defendant through its counsel, the Court disagrees.  As Defendant asserts in the Reply, Rule 4.2 of the Colorado Rules of

---

[3] Because Defendant fails to indicate which of the two paragraphs numbered 73 it seeks to strike, the Court will not include either one in its order.  Additionally, because paragraphs 68-70 do not create the type of undue prejudice on which the Court relies for its ruling, they are not stricken.

Professional Conduct provides that a "*lawyer* shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." (Emphasis added). The rule did not prohibit Mr. Stanton from contacting the adjustor or other representative of Defendant to assert his claim for loss of consortium. Moreover, Plaintiff's counsel and Defendant's counsel had previously addressed the issue of communicating with the adjustor. [#28-3]. In conjunction with Mrs. Stanton's claims, Defendant's counsel wrote in an e-mail to Plaintiff's counsel that Plaintiff's counsel was authorized to communicate with the adjustor. *Id.* Defendant's counsel simply asked that because they are in litigation, the communication occur in writing only and that a copy be provided to Defendant's counsel. Thus, pursuant to counsels' own agreement, Plaintiff's counsel could have contacted the adjustor on behalf of Mr. Stanton to make a claim for loss of consortium. Plaintiffs' contention that they had to contact Defendant's counsel to assert Mr. Stanton's loss of consortium claim is without merit.

Finally, even if the Court agreed with Plaintiffs' characterization that the e-mails show Mr. Stanton seeking coverage for loss of consortium benefits, the allegations derived from the e-mails fail to state a claim for relief. Plaintiffs contend in the Response that "[t]he allegations specify the circumstances supporting the claims by Patrick Stanton that his insurer breached the covenant of good faith and fair dealing." [#36] at 4. The Court finds, however, that the allegations involving Mr. Stanton, which as far as the Court can tell are based entirely on the e-mails at issue here, do not state a claim for breach of the covenant of good faith and fair dealing, a violation of C.R.S. § 10-3-1104(1)(h) or a violation of § 10-3-1115.

"For an insured to prevail on a first-party tortious bad faith breach of contract claim against the insurer, the insured must establish that the insurer acted: (1) unreasonably and (2) with knowledge of or reckless disregard of its unreasonableness." *Dale v. Guaranty Nat. Ins. Co.,* 948 P.2d 545, 551 (Colo. 1997). To establish liability under C.R.S. § 10-3-1104(1)(h), Plaintiffs must show that Defendant engaged in any of seventeen unfair claim settlement practices. Although not specific, Plaintiffs appear to be alleging that, with respect to Mr. Stanton, Defendant violated § 10-3-1104(1)(h)(XIV) by failing to "promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement." [#22] at ¶ 69. As to the alleged violation of § 10-3-1115, Plaintiffs must show that Defendant unreasonably delayed or denied "payment of a claim for benefits owed to or on behalf of any first-party claimant."

As noted above, Plaintiff's counsel first inquired about joining Mr. Stanton in the action in an e-mail to Defendant's counsel on May 17, 2012. [#28-1] at 3. Nothing in the Second Amended Complaint alleges that Mr. Stanton made a claim for loss of consortium benefits before that date. Plaintiff's counsel and Defendant's counsel then exchanged e-mails about Mr. Stanton over the next four business days. [#28-1]. On May 22, 2012, Defendant's counsel said he would not oppose the request to amend the complaint to add Mr. Stanton as a party. [#28-1] at 1. Eight days later, on May 30, 2012, before Plaintiffs amended their complaint to add Mr. Stanton, Defendant agreed to pay the $100,000 limit on Mrs. Stanton's underinsured motorist policy, the same policy under which Mr. Stanton was seeking loss of consortium benefits. Thus, the time between when Plaintiff's counsel first inquired about loss of consortium benefits for Mr. Stanton and when Defendant agreed

to pay the policy limit was a total of 13 days, from May 17, 2012 to May 30, 2012. Those facts in no way state a claim on behalf of Mr. Stanton that Defendant breached the covenant of good faith and fair dealing or violated the cited statutes. Therefore, even if the Court agreed with Plaintiffs that the e-mails show Mr. Stanton making a claim for benefits, the allegations derived from those e-mails fail to state a claim for relief. Consequently, Mr. Stanton's claims for breach of the covenant of good faith and fair dealing, and for violations of C.R.S. §§ 10-3-1104(1)(h) and 10-3-1115, would be subject to dismissal.

### IV. Conclusion

For the foregoing reasons, the Court finds that Defendant has satisfied the standards for striking certain paragraphs from the Second Amended Complaint. Pursuant to Fed. R. Civ. P. 12(f), the Court finds that the specified paragraphs are immaterial and impertinent to the causes of action and that Defendant would be prejudiced if they are not stricken.[4]

Accordingly,

IT IS HEREBY **ORDERED** that the Motion [#28] is **GRANTED IN PART**.

IT IS FURTHER **ORDERED** that paragraphs 64-67 and 71, and paragraph 77 on page 11, are **STRICKEN** from Plaintiffs' Second Amended Complaint [#22].

Dated: September 27, 2012

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge

---

[4] At the end of the Motion, Defendant requests reasonable attorney fees but cites no authority for the request. The Court therefore finds no basis for such an award.